111, 3130, and 1182, University of Illinois Hospital v. Bonta Aire Hospital. I'm back. Good morning, Justices, Counsel, Elizabeth Capiloutti on behalf of the appellant cross appellee. Just so I'm clear, since we're cross appellants and I haven't done this in a while relative to time, I'm assuming it's still just a 20 minutes, and can I divvy it up 10 in 10 just so that it would be more consistent? You want to tell us about why the circuit court had jurisdiction over this case? Absolutely. I would say to you this is a final determination. A final determination is one that terminates the litigation on its merits. How did that happen? Wasn't there a request by the claimant for permanent disability benefits, correct? Can we agree on that? Correct. This matter was tried on all issues. It was not an empty deal. It was on all issues. The record appears to demonstrate there was no definitive approval by a majority of the three panel members. There was a dissent. One commissioner found he was entitled to PD, but not PTD. So if you don't have a ruling by a majority of the commission members, arguably the decision isn't final on that issue, and therefore if it's not final, either the circuit court or we have jurisdiction. So how do you get around that argument? Well, I would submit to you it was final and that there was a majority opinion. There's no question that this was decided under unique circumstances, and the commission itself acknowledged that in their decision. But at the end of their decision, it says the commission therefore hereby orders, and they ordered the respondent to pay TTD, and they ordered the respondent to pay medical. Wait, wait, wait, come on, now, that's not. That was the quote-unquote majority decision issued by a single commissioner. And then you've got a dissent. Lindsay says nothing. It's nothing. There's no causation. And the third commissioner turns around and says, well, I'll buy causation. But Molly Mason, of course, wanted to make him a permanent total. So you've got Dauphine saying he gets, you know, there's no decision on his permanency. Three people have not, two people have not agreed on his permanency. And I would respectfully disagree with you. I got it right here. Commissioner Lindsay and Commissioner Dauphine, in fact, did agree on it. I mean, Commissioner Mason, as you correctly pointed out, wanted him to be a permanent total. And she says right in her dissent, I respectfully disagree with the majority. Well, the only other two commissioners that are left there are Lindsay and Dauphine. And I agree with you that Lindsay is not clear. Look, the fact that the commissioners don't know the difference between a non-majority single judge opinion and a majority opinion, meaning something agreed to by two people, is not really our problem. But if you take a look at what they did, let's just go through this real easy. We've got a decision and opinion on review that is drafted evidently by Dauphine. And it says here that it's further ordered that respondent pay the petitioner the sum of $291 a week for a period of 90 and one-seventh weeks as provided in 8E9 of the Act. The reason we interest the State is because of the loss of the petitioner's right hand to the extent of 25 percent of the loss of the petitioner's left hand to the extent of 22.5. That's what Dauphine had to say. What does Commissioner Mason have to say? Ignores the value. I was elected to ignore the applicable law, successfully shifted the burden. Respondent did not call any vocational expert. I blocked. Permanent total. What does Lindsay say? I dissent on the issue of causal connection. If she says there's no causal connection, you can't suggest she's voted to give the person total disability benefits, can you? I am suggesting that. I'm not saying that the commission always makes sense. Maybe your best argument, but it makes no sense. I agree with you the commission does not always make sense, but that's exactly what I'm suggesting. Her dissent only speaks to causation. Her claim should have been denied due to a failure to prove the requisite causal connection. Therefore, I respectfully dissent. Usually when you dissent and you say that, you're not saying, but I'm going along with it. That's exactly what she did relative to permanency. Can you have permanency without causation? Well, when you have two commissioners who did, in fact, find causation, yes, you can. Because you also had two commissioners who, in fact, found permanency. This case to me is like a shirt that's been misbuttoned. The only way to solve it is to unbutton it and do it over again. So that would be vacating the entire decision of the commission? No, send it back to them and tell them to issue a final decision. Give us a final decision. You have none. Relative to all issues? Permanency. Just to permanency. So would that be relative? Because none of these commissioners other than Commissioner Dauphine are actually still even at the commission. I mean, Commissioner Mason is now an arbitrator and Lindsay is no longer there. And I don't think that the Act says that the majority must be the same two people. I think we're reading something into the Act. I looked up the word majority today before I left and it said greater than one-half of the total. And so that's what you have here. You have two commissioners who agreed to accident and causation and you have two commissioners that, in fact, agreed to permanency. No, we don't have two that agreed to the same permanency. Yes, I'm saying that you can read that from the act. Am I supposed to read that into or imply that that's what Lindsay is saying? Yes, and I think you can infer that from this decision. I mean, I believe you can. I believe the case law states that you can infer findings from the decision. And in Molly Mason's special concerns and the dissent, she says in the majority's view. Well, the only two people left are Dauphine and Lindsay. She says in the majority review, you know, she dissents. She goes also to say the majority ignores the reality of the petitioner's background. I dissent with the majority. Well, yes, I believe that you can infer from what Commissioner Mason is saying, that the majority is Commissioner Dauphine and Commissioner Lindsay. I disagree with that.    I mean, I think that Molly Mason cannot determine that Commissioner Lindsay found no causation but went along with permanency. I mean, it just simply doesn't make sense. I agree with you. It doesn't make sense. But that's what this decision says. And I think that we should force them to make sense once in a while. And you have a distinct advantage because of the new break-up of the commissioners. His favorite commissioner is gone. It's now an arbitrator. It's not like you're going to lose the case if it got remanded. Well, I also want to point out, too, I mean, what's the point of finality? I mean, at some point, all of this has to end, and I don't understand if it is further hereby ordered by the commission. Now that that's not final, I suspect if I were in front of a circuit court judge fighting a 19G petition, I probably would not be able to make this argument. I mean, to me, the whole purpose is to have finality. And yes, that is a lofty goal. But on the other hand, we have an independent obligation to examine our jurisdiction. You have to consider that as well. Absolutely. And certainly, subject matter jurisdiction is always something that must be in its It can't be conferred by the parties. It can't be waived. All those things.  And I completely agree with you about that. I just would respectfully submit that this is, in fact, a final and appealable determination. So with that in mind, do you want me to continue on to the merits of the case? I've been doing this for a long time. I'm going to finish your time. We'll tell you how to make your argument. All right. Well, let me then move on to accident. I would submit to you that the claimant failed to prove accident, and the decision of the commission stating otherwise is against the manifest weight of the evidence. That is because the claimant is basing her theory of recovery on a repetitive trauma claim. Repetitive trauma. That being her job duties are repetitive. And there must be a causal nexus between the actual job duties and the cause of the condition. And in this case, it's carpal tunnel syndrome. Well, the commission found in their decision, which clearly is a poorly drafted decision, that her job duties were not repetitive in nature. They said that they were sporadic and varied. The exact opposite of repetitive. And they actually went on to say because of these job duties, they couldn't really rely on Dr. Fernandez's opinion because he didn't have any sense of the job duties, and therefore they wouldn't give her causation as it related to the fundamental cause of the carpal tunnel syndrome as related to her job duties. They said it wasn't there. But then they inexplicably went on to say even though these job duties aren't repetitive in nature, they're not as important in a theory of aggravation of a preexisting condition. So I would submit to you that the commission somehow used two different standards of proof as it related to underlying causation versus an aggravation theory. And that's not what the law is. The law is clear. You have the same standard of proof whether it be the initial cause of carpal tunnel syndrome due to repetitive trauma or an aggravation of a preexisting condition. You still have to meet the same burden of proof. You don't lessen the burden of proof just because it's an aggravating factor. They went on to say because her pain came about and it aggravated the underlying condition, that there was a, that they gave her causation. Again, I would submit to you how do you find causation when the commission has specifically said her job duties are not repetitive when you're advancing a repetitive trauma theory. Further, Dr. Fernandez had a faulty understanding as to her job duties. He did not know what her job duties was. When they disposed him, he said he hadn't memorialized them in his medical records. And as of the date that he was deposed, he couldn't remember correctly as to what specifically those job duties were. He didn't know. So he was presented with a hypothetical question about her job duties. And he answered it affirmatively, yes, there's causal relationship then. But the issue is when we got to trial, that hypothetical was not borne out by the claimant's testimony. It was a completely different job duties that she testified to. So Dr. Fernandez, I would submit to you, causation opinion is not credible, which is pretty much what, in fact, the commission found. They said that we don't really agree with Dr. Fernandez, but we just don't think that's as important when it comes to an aggravating theory. The commission also stated that they discounted Dr. Fernandez's opinion because he didn't state that he didn't know that the claimant ultimately was diagnosed with an underlying disease process, that being rheumatoid arthritis. Well, Dr. Papirsky, who's the doctor that first saw the claimant in 2000, stated specifically that there was no causal relationship between her work duties and her developing carpal tunnel syndrome. And he, in fact, stated in 2000, I think there's something else going on with her, that she's had some sort of underlying disease process she should have it looked into. Thereafter, she started treating, and lo and behold, by 2004, she was diagnosed with seronegative rheumatoid arthritis. Dr. Goldberg then sees her again in 2008, has the benefit of all these records, and says unequivocally that there's no causal relationship between the claimant's job duties and her development of carpal tunnel syndrome, and it has to do with her underlying disease process. Well, given the commission's finding that her job duties aren't repetitive but sporadic and varied, coupled with the fact that they didn't really give much weight to Dr. Fernandez's opinion, the only opinions you have left then are Dr. Papirsky and Dr. Goldberg, both who say that there is no causal relationship between her work duties and her development of carpal tunnel syndrome. Given such, I would say that the commission's decision finding accident is clearly against the manifest way of the evidence. Thank you. Thank you, Counsel. Counsel, you may respond and also address your cross-view. Thank you. May it please the Court, Counsel, John Castaneda on behalf of the claimant, Martha Aragon. First address the jurisdictional issue. Yes, Your Honor. My argument to this panel, which I made to the circuit court, is there was not a majority opinion for the reasons that this Court has elicited during my counsel's argument. We have a majority opinion on accident. We have a majority opinion on causal connection, temporary total disability, medical services, but not on permanency. There's no way that we can argue that Commissioner Lindsay found permanency when she's not finding causal connection. Commissioner Lindsay wanted to deny this case in its entirety, and that's what she said in her opinion. She said this claim should have been denied. We have two commissioners, Commissioner Dauphine and Commissioner Mason, saying we find in behalf of the claimant everything except permanency. Commissioner Lindsay says that she agrees with the arbitrator who found that Miss Aragon suffered bilateral carpal tunnel syndrome, but not to the extent that it permanently disabled her under an odd lot theory. She found that, as arbitrator Peterson, that she suffered permanent partial disability to the extent of each of her hands. Commissioner Mason, on the other hand, took into consideration the vocational report of Mr. Belmonte, his opinions, as well as reviewing the job that was allegedly made and offered and tendered to Miss Aragon and said, no, there's no permanent total. So there's a situation where we have a permanent total, odd lot permanent total situation here. So in short, no two commissioners agreed on the PPD award, correct? That is correct. So your solution is, I believe from your brief, you want it remanded back to the commission only to decide the issue of permanency. That is correct, Your Honor. All other things having been decided. Correct. I would ask that the instructions be given to the commission, reverse the circuit court, and send it back to the commission to make a majority finding on what's the permanent nature and extent of my client's injuries. I made that argument to the circuit court, and I'm making it here as well. With regard to the decision itself, assuming that that does not occur, I'd like to make that argument in regard to accident. As we know, the standard here is whether or not the commission's decision is against the manifest weight of the evidence is the opposite conclusion clearly apparent. Here the commission made a decision between competing opinions, competing medical opinions. We have Dr. Fernandez. We have Dr. Gonzalez on one hand stating that there is a causal relationship between my client's bilateral carpal tunnel syndrome and her work activities. And we have on the other hand the respondent's Section 12 examiners, Dr. Popersky and Dr. Goldberg. And both Dr. Popersky and Dr. Goldberg opine that she has carpal tunnel syndrome. That's not in dispute. She has it in both hands. The dispute is whether or not some other systematic condition known only to her or only personal to her was the cause, the major cause of her bilateral condition. And we have testing that was ordered by her family doctor, Dr. Hurston, who excluded the exact reasons that Popersky and Goldberg thought she had the carpal tunnel. She doesn't have rheumatoid arthritis. She doesn't have other systemic conditions that would cause this carpal tunnel. The commission weighed those opinions and they ruled in favor of the claimant. With regard to causation, Dr. Fernandez rendered his opinions based on a specific history provided by Ms. Aragon. He speaks the same language as Ms. Aragon. He noted that she described the job in details. And I provided a hypothetical based upon what I understood her job activities to be, considering that we took Dr. Fernandez's deposition in 2005 and the case didn't go to trial until 2008. Be that as it may, the petitioner did testify that she had to clean offices. If you read her testimony, she had to clean doctors' offices in the first building that she worked in. In the second building that she worked in for two years, she was cleaning classrooms, bathrooms, public bathrooms, private bathrooms. But the first building she worked in, she cleaned doctors' offices, which is what I gave to Dr. Fernandez. And we understand that repetitive trauma is a result of the cumulative effects of doing this type of work, which she's done for 10 years as a janitor. There's no evidence suggesting that she had this condition prior to working for the university. There's no evidence to suggest that she had any other metabolic condition that would cause or contribute to carpal tunnel. So I would submit that the opinion of Dr. Fernandez is reliable and is based on facts that are in the record. With regard to the permanency aspect of the case, if you find that there was a majority opinion on PPD, permanent partial disability, I point to the fact that Mr. Belmonte was the sole rehabilitation counselor who testified in this case. Mr. Belmonte took into consideration the job that was tendered to Ms. Aragon, reviewed the job requirements, and he testified to a reasonable degree of vocational certainty that Ms. Aragon's would not be compatible with this position. She didn't have the skill set. She didn't have the education. Even the one-year training, as Commissioner Mason pointed out, would be futile. She would not be able to rise to the level necessary to perform the computer work, the secretarial work, and the data work that was required by this clerical assistant position. This is the unrebutted testimony that we have in the record to show that she would not be able to accept this position and take on that position even with a 12-month training program. This is the only testimony we have. I would submit that the evidence is clear. There is no other conclusion. She's an ad la permanent total, and she should be found as such if the case is not remanded. Thank you. Thank you, counsel. Counsel, you may reply and respond. I'll be very brief. I'll respond to counsel's argument relative to permanent total disability benefit. Can I ask one question at a time? Pardon me? If it goes back, do you acknowledge it would go back only on the issue of permanency? Do I acknowledge? If it goes back, do you acknowledge that it should go back only on the issue of permanency? Well, I would certainly say that's up to this Honorable Court. Why? Do you think that it should go back on some other issue that hasn't been decided? Considering you earlier said everything had been decided. I think everything has been decided, so that's what I'm saying. Yes, I do agree. I think that everything has been decided, so I don't believe that it should be remanded back to the court. But that's not my question. My question was if it goes back, does it go back on permanency only, or does it go back on permanency on something else? I would say I would request that if you are going to vacate it and send it back, it should go back on everything, because as it stands now, we have a 2 to 1, and that should still be reflected into the record that there was actually a dissent, and I don't know what would happen then when it went back to the Commission and how they might rule relative to the other issues. I mean, I guess we can give them very specific instructions that say you must find accident 2 against 1 and causation 2 against 1, and now you must revisit the issue of permanency relative to that. But, I mean, I think that the — Aren't there some restrictions on that? I mean, thoughts of law, the case, other things come to mind. I mean, can you just all of a sudden open it up to everything, like I have a trial de novo again? What would be the authority for that? No, I don't want a trial de novo. Unfortunately, that happens a lot of times when you vacate orders and send it back to the Commission. It needs to be very clear that if it's being vacated, the only purpose that it would be in front of the Commission then, if we're only putting it back for permanency, is that you can only reassess permanency based upon the record that you have in front of me. The long and short of it is you're not really comfortable answering this and binding your client. Okay. Is that a behavior you're trying to say in so many words? I guess maybe that would be true. And I apologize if I'm not — if I'm dancing around the issue. I would submit it to you, Judges. I mean, however it is that you feel that it should — obviously, if it's not a final decision, if it needs to be remanded to the Commission, that's certainly within your purview of that. Thank you. Thank you, Counsel. Counsel, any — Just briefly, I agree that the law of the case would apply in this situation. Those issues that have been decided have been decided. The only issue that hasn't been decided is permanency. So if it does — it is remanded back, it should only be remanded back with instructions to decide the issue of permanency. Thank you. Thank you, Counsel. Thank you, Counsel, for your arguments in this matter. It will be taken under advisement that this position shall issue and stand in brief recess.